UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.A.A.,<br><br>                          Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden of the Otay Mesa Detention Center; GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, ICE Enforcement and Removal Operations; TODD M. LYONS, Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; and MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>                          Respondents. | Case No.:  3:26-cv-03071-LEK-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Before the Court is Petitioner Y.A.A.'s ("Petitioner") Amended Petition for Writ of Habeas Corpus and Order to Show Cause Within Three Days; Complaint for Declaratory and Injunctive Relief ("Amended Petition"), filed on May 20, 2026. [Dkt. no. 4.] Respondents Christopher J. LaRose, Senior Warden of the Otay Mesa Detention Center; Gregory J. Archambeault, San Diego Field Office Director, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations; Todd M. Lyons, Senior Official Performing the Duties of the Director, ICE; and Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS" and collectively "Respondents"), filed a Return to Amended Petition for Writ of Habeas Corpus

("Return") on May 27, 2026. [Dkt. no. 8.] Petitioner filed a Traverse in Support of His Petition for Writ of Habeas Corpus ("Traverse") on June 2, 2026. [Dkt. no. 9.]

The Amended Petition is granted in part and denied in part for the reasons set forth below.

### BACKGROUND

Petitioner, a citizen and national of Ethiopia, entered the United States on December 29, 2025. See Amended Petition at ¶¶ 1-2. That same day, Petitioner was taken into DHS custody and transported to the Imperial Beach Station for processing. See id. at ¶ 57; Return, Exh. 1 (redacted DHS Record of Deportable/Inadmissible Alien, Form I-213, dated 12/30/25 ("Form I-213")) at 3. At some point after being taken into custody, Petitioner was moved to the Otay Mesa Detention Center ("OMDC"). Petitioner asserts that OMDC is an adult immigration detention facility. Petitioner, however, contends that he was a minor when he was detained. Petitioner alleges that he was still being detained at OMDC as a minor when he filed the Amended Petition. See Amended Petition at ¶ 1.

On December 30, 2025, while at the Imperial Beach Station, Petitioner was interviewed by Border Patrol Agent Jed Panganiban ("Panganiban"). During his interview, Petitioner expressed fear about the possibility of returning to Ethiopia and asserted concern about being harmed if he were to return. Accordingly, Petitioner was referred to U.S. Citizenship and Immigration Services ("USCIS") so that an asylum officer could make a credible fear determination concerning Petitioner's potential removal to Ethiopia. See Form I-213 at 3-4. Panganiban also asked for Petitioner's date of birth. Petitioner is recorded as having responded that his date of birth is June 1, 2006. See Return, Exh. 2 (redacted DHS Record of Sworn Statement in Proceedings Under Section 235(b)(1) of the Act, Form I-867A, dated 12/30/25 ("Form I-867A")) at 2.

Petitioner asserts that his actual date of birth is June 1, 2008, see Traverse at 2, 6, but that he was coerced by immigration officers to give a false date of birth during

3:26-cv-03071-LEK-VET

his December 30, 2025 interview, see Amended Petition at ¶ 58.[1] Petitioner also asserts that Border Patrol officers seized his birth certificate when he was detained. See id. at ¶ 5; see also Traverse, Exh. D at PageID.252-53 (redacted statement by Y.A.A. and Certificate of Translation, dated 5/27/26 ("Y.A.A. Statement")). He further asserts that, as of the date of the Amended Petition, the birth certificate taken by the immigration officials had not been returned to him or his counsel, even though they requested the certificate several times. [Amended Petition at ¶ 5.] Petitioner also alleges that Border Patrol officers pressured Petitioner to lie about his date of birth, accused him of being a criminal, and threatened to remove Petitioner to Ethiopia unless he told the officers that he was an adult. See Y.A.A. Statement at PageID.252.

On January 12, 2026 and January 16, 2026, Petitioner was interviewed by an asylum officer who determined that Petitioner had a credible fear of torture. See Amended Petition at ¶¶ 59-60; see also id., Exh. A at PageID.169 (pg. 4 of redacted USCIS Record of Determination/Credible Fear Worksheet, Form I-870, dated 1/16/26 ("Form I-870")). On January 16, 2026, Petitioner disclosed to the asylum officer that he previously lied about his birthdate. Petitioner explained that he provided an incorrect date

---

[1] Petitioner redacted his revised date of birth in the exhibits that were appended to his Traverse. See, e.g., Traverse, Exh. H at PageID.268 (redacted certified translation of a Federal Democratic Republic of Ethiopia Vital Events Registration Agency Birth Certificate). Petitioner, however, is no longer a minor, regardless of whether his date of birth is June 1, 2006 or June 1, 2008. Petitioner also effectively disclosed his revised date of birth in the Traverse. See Traverse at 2 ("But later USCIS credible-fear records separately recorded a date of birth of two years later, the date of birth recorded on Petitioner's birth certificate."); id. at 6 ("However, the credible-fear worksheet recorded June 1, 2006, as the initial date of birth while also separately listing another date of birth of two years later. The January 12 and January 16 interviews recorded Petitioner's answer to the date of birth question as a date two years later than the date Respondents claim is Petitioner's date of birth."). Because Petitioner is no longer a minor and has disclosed his revised date of birth throughout the Traverse, the Court refers to the revised date of birth throughout the instant Order.

of birth because he felt fearful after an officer told Petitioner that he would be returned to Ethiopia because of his status as a minor. See id., Exh. A at PageID.188 (pg. 11 of redacted USCIS Interview Notes for 1/16/26 interview by Officer M Reheman ("1/16/26 Interview Notes")). The asylum officer determined that Petitioner was a "[p]ossible [unaccompanied alien child ('UAC')]." [Id.] Petitioner filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture with the immigration court in April 2026 and with USCIS in May 2026, see Amended Petition at ¶ 26; Traverse at 3, using the June 1, 2008 date of birth, see Traverse at 3.

Respondents state that, after Petitioner provided his revised birthdate to the asylum officer during his credible fear interview, "ICE conducted a forensic dental examination which concluded that the probability that Petitioner had reached the age of 18 at [sic] 87.05%." [Return at 3 (citing id., Exh. 4 (Dental Age Assessment Report by David R. Senn, DDS, D-ABFO ("Dr. Senn"), dated 1/22/26 ("Dental Report")).] On May 22, 2026, an immigration judge conducted a custody redetermination hearing, considered evidence presented by DHS and by Petitioner through his immigration counsel, determined that Petitioner was an adult, and denied any modification of his detention status. Return at 3; see also id., Exh. 5 (audio file of 5/22/26 custody redetermination hearing, ("5/22/26 Hearing Recording")).[2]

Petitioner alleges that his detention violates the Administrative Procedure Act ("APA"), Title 5 United States Code Section 706(2)(A), (C), and (D); [Amended Petition at pgs. 17-19;] his Fifth Amendment right to due process; [id. at pgs. 20-22;] the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Title 8 United States Code Section 1232; [id. at pgs. 22-23;] and Title 45 Code of Federal Regulations

---

[2] On June 23, 2026, the Court filed an entering order directing Respondents to file a notice of lodging concerning Exhibit 5 to their Return and to submit a copy of Exhibit 5 to the Clerk's Office. [Dkt. no. 10.] Respondents complied. See Notice of Lodging of USB as Exhibit to Return, filed 6/26/26 (dkt. no. 11).

3:26-cv-03071-LEK-VET

Section 410.1000 *et seq.*, as well as the Office of Refugee Resettlement ("ORR") Policy Guide, [id. at pgs. 23-24]. Petitioner also claims that his detention violates the Flores Settlement Agreement.[3] See id. at pgs. 19-20; see also id. at ¶¶ 8, 42-43.

Petitioner asks the Court to, *inter alia*: 1) assume jurisdiction over this matter; 2) issue a declaratory judgment that Respondents must comply with all relevant statutes, regulations, and settlement provisions; 3) issue a declaratory judgment that Petitioner's detention in an adult facility is unlawful; 4) issue a writ of habeas corpus ordering Respondents to transfer Petitioner from adult detention to ORR custody for timely sponsor-placement processing, or, in the alternative, issue an order directing Respondents to provide Petitioner with a custody redetermination hearing subject to several procedural safeguards and to order Petitioner's transfer to ORR custody during the pendency of the custody redetermination hearing;[4] 5) issue an order that Petitioner be released to the custody of his proposed sponsor, Ardo Moalin Abdi; 6) issue an order prohibiting Respondents from transferring Petitioner to another adult detention facility without prior approval from the Court; and 7) order any other appropriate relief, including awarding Petitioner attorney's fees and costs. See id. at pgs. 25-26.

---

[3] The Flores Settlement Agreement is "a 1997 settlement agreement between the United States and a class of all minors subject to immigration detention." Flores v. Rosen, 984 F.3d 720, 726 (9th Cir. 2020). The class of minors was a nationwide class. See by Perez-Funez v. Dep't of Homeland Sec., Case No. CV 81-01457-MWF (Ex), 2026 WL 982623, at *1 (C.D. Cal. Apr. 6, 2026) The Flores Settlement Agreement "established nationwide standards for the detention, release, and treatment of minors by U.S. immigration authorities." Id. (citation and internal quotation marks omitted).

[4] Petitioner also asks the Court to "order Respondents to provide, within 7 days, a prompt Flores-compliant custody hearing before a neutral adjudicator." [Amended Petition at pg. 26.]

## STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to Title 28 United States Code Section 2241. See 28 U.S.C. § 2241(a); Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. See 8 U.S.C. § 1252(a)(1), (5); see also Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process – for example, a claim of indefinite detention – federal habeas corpus jurisdiction remains in the district court. Alvarez v. Sessions, 338 F. Supp. 3d 1042, 1047-48 (N.D. Cal. 2018) (citations omitted); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir. 2006).[5]

## DISCUSSION

### I.  Statutory and Regulatory Background

This district court has previously stated:

> United States Magistrate Judge James P. Donohue provided a thorough overview of the legal framework relevant to the instant Petition in B.I.C. v. Asher, No. C16-132-MJP-JPD, 2016 WL 8672760 (W.D. Wash. Feb. 19, 2016):
>
> Before the creation of DHS in 2002, the care and placement of unaccompanied alien children ("UAC") in the United States was the responsibility of the Office of Juvenile Affairs in the former Immigration and Naturalization Service ("INS"). See F.L. v. Thompson, 293 F. Supp. 2d 86, 96 (D.D.C. 2003). In 2002, INS's functions were split between the enforcement of

---

[5] Nadarajah was abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281, 138 S. Ct. 830 (2018), as recognized by Esquivel-Ipina v. LaRose, 812 F. Supp. 3d 1073, 1077 (S.D. Cal. 2025).

federal immigration law, which was left to DHS, and the care of immigrant children, which was left to [the U.S. Department of Health and Human Services ("HHS")]. See Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 (2002) ("HSA"). Those laws were amended again in 2008 through the William Wilberforce Trafficking Victims Protection Act ("TVPRA"), further separating DHS's and HHS's functions by placing the care and custody of children under HHS's jurisdiction and clarifying the respective roles and responsibilities of the two agencies with respect to UACs.

### A.     The Homeland Security Act of 2002

With the enactment of the HSA, Congress created DHS and transferred most immigration functions formerly performed by INS to DHS and its components, including U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and ICE. See HSA; Department of Homeland Security Reorganization Plan Modification of January 30, 2003, H.R. Doc. No. 108-32 (2003) (also set forth as a note to 6 U.S.C. § 542). Notably, Congress transferred to [the Office of Refugee Resettlement ("ORR")] the responsibility for the care of any UAC "who [is] in Federal custody by reason of [his or her] immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A). The HSA also transferred to ORR the responsibility for making all placement decisions for UACs, required ORR to coordinate these placement decisions with DHS, and required ORR to ensure that UACs are not released upon their own recognizance. See 6 U.S.C. §§ 279(b)(1)(C), (D), (b)(2).

### B.     The Trafficking Victims Protection Reauthorization Act of 2008

The TVPRA, which was signed into law on December 23, 2008, contains statutory protections relating to UACs and codified protections related to the processing and detention of UACs. The TVPRA built on the split of duties in the HSA and further requires that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of

3:26-cv-03071-LEK-VET

Health and Human Services." 8 U.S.C. § 1232(b)(1). It also provides that in most instances, "any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3).

The TVPRA makes clear that HHS is responsible for all placement decisions for UACs in its custody, and for conducting suitability assessments for those placements. 8 U.S.C. § 1232(c). It requires that UACs in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child," and it provides guidelines for the reunification of UACs with their families by HHS. 8 U.S.C. § 1232(c)(2), (3).

The protections TVPRA affords UACs apply after the HHS, in consultation with DHS, determines that the applicant is indeed a child. 8 U.S.C. § 1232(b)(a). . . .

N.B. v. Barr, Case No.: 19-CV-1536 JLS (LL), 2019 WL 4849175, at *1-2 (S.D. Cal. Oct. 1, 2019) (some alterations in N.B.).

The TVPRA mandates that the Secretary of HHS, in consultation with the Secretary of DHS, "develop procedures to make a prompt determination of the age of an alien," which are to be used by both DHS and HHS for children in their respective custody. 8 U.S.C. § 1232(b)(4). The TVPRA further directs that, "[a]t a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien." Id. To that end, "HHS and DHS worked jointly to develop . . . age determination policies and procedures." ORR Unaccompanied Alien Children Bureau Policy Guide: Section 1 ("ORR Guide"), https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1#1.6 at § 1.6: Determining the Age of an Individual without

Lawful Immigration Status (Revised Aug. 1, 2024), *available at* https://perma.cc/3K4R-ZJFK.

The ORR Guide states that HHS may conduct age determinations for detained individuals where there is a reasonable suspicion that the individual is eighteen years of age or older. See ORR Guide § 1.6.1. Where there is conflicting evidence concerning an individual's age, an HHS funded care provider case worker notifies a Federal Field Specialist who then makes an age determination after reviewing the evidence collected by the care provider. Id.

The ORR Guide states:

> Procedures for determining the age of an individual **must take into account the totality of the circumstances and evidence**, including the non-exclusive use of radiographs, to determine the age of the individual. ORR may require an individual in ORR custody to submit to a medical or dental examination, including X-rays, conducted by a medical professional or to submit to other appropriate procedures to verify their age. If ORR subsequently determines that such an individual is an unaccompanied alien child, the individual will be treated in accordance with ORR's UAC Bureau regulations.
>
> ORR considers multiple forms of evidence in making age determinations, and determinations are made based upon a totality of evidence. ORR may consider information or documentation to make an age determination, including but not limited to:
>
> 1. Documentation:
>
>    • Official government-issued documents, including birth certificates. If there is no original birth certificate, certified copy, photocopy or facsimile copy of a birth certificate acceptable to ORR, ORR consults with the consulate or embassy of the individual's country of birth to verify the validity of the birth certificate presented.
>
>    • Authentic government-issued documents issued to the bearer.

3:26-cv-03071-LEK-VET

- Other documentation, such as baptismal certificates, school records, and medical records, that indicate the unaccompanied alien child's date of birth.

2. Statements by individuals (including the unaccompanied alien child) determined to have personal knowledge of the unaccompanied alien child's age and who HHS concludes can credibly attest to the age of the unaccompanied alien child:

- Statements provided by the unaccompanied alien child regarding their age or birth date. (An unaccompanied alien child's uncorroborated declaration regarding age is not used as the sole basis for an age determination.)

- Sworn affidavits from parents or other relatives as to the individual's age or birth date, if such persons can be identified and contacted.

- Statements from parents or legal guardians

- Statements from other persons apprehended with the individual.

- Statements from other persons.

- Information from another government agency (Federal, State, local or foreign)

- State/local arrest records.

- Child welfare agency records.

3. Medical Age Assessments:

Medical Age Assessments include both the use of imaging technology, such as radiography, and physical examinations.

10

Regarding these assessments:

- Medical age assessments should not be used as a sole determining factor but only in concert with other factors.

- A medical professional experienced in age assessment method(s) must perform the examination, taking into account the individual's ethnic and genetic background.

- **Dental maturity assessments using radiographs may be used to determine age, but only in conjunction with other evidence**.

- As no current medical assessment method can determine an exact age, best practice relies on the estimated probability that an individual is 18 or older. The examining doctor must submit a written report indicating the probability percentage that the individual is a child or an adult.

- The ORR/Federal Field Specialist (FFS) supervisor must review the determination regarding the age submitted by the examining doctor.

- If an individual's estimated probability of being 18 or older is 75 percent or greater according to a medical age assessment, and this evidence has been considered in conjunction with the totality of the evidence, ORR must determine that the individual is 18 years or older and may refer the individual to the U.S. Department of Homeland Security (DHS). . . .

Id. at § 1.6.2 (emphases added and original emphases omitted).

When [unaccompanied minors subject to the TVPRA] "age out" of ORR custody (*i.e.*, reach the age of 18), they are transferred to Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") custody. 8 U.S.C. § 1232(c)(2)(B). Under § 1232(c)(2)(B):

3:26-cv-03071-LEK-VET

> If a minor . . . reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.
>
> 8 U.S.C. § 1232(c)(2)(B). Accordingly, persons who have aged out are afforded certain protections upon their transfer to ICE custody. Garcia Ramirez v. U.S. Immigration and Customs Enforcement, 812 F. Supp. 3d 86, 91-92, No. 18-508 (RC) (D.D.C. Dec. 12, 2025). Those protections require **all** persons who have aged out to be considered for placement in the least restrictive setting. Lopez v. Sessions, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *9-10 (S.D.N.Y. June 12, 2018) (holding that individuals who age out while on physical release but in legal custody of HHS are entitled to TVPRA protections); F.S.S.M. v. Wofford, No. 1:25-cv-01518-TLN-AC, Slip Op., 2025 WL 3526671, at *4-5 (E.D. Cal. Dec. 9, 2025) (holding that the petitioner who aged out was subject to the TVPRA, not [8 U.S.C.] § 1225(b)(2)).

Singh v. Stevens, 821 F. Supp. 3d 898, 903 (N.D. Ohio 2026) (some alterations in Singh). With this framework in mind, the Court turns to the parties' arguments.

## II.    Analysis

At the outset, the Court emphasizes the limited nature of the issues before it. Petitioner's claims, as relevant here, do not require the Court to review a final order of removal, decide Petitioner's eligibility for immigration relief, or make a factual determination regarding Petitioner's age. Rather, Petitioner challenges Respondents' decision to continue detaining him based upon an age determination that Petitioner alleges was not made in compliance with statutory and regulatory procedures. See Amended Petition at pgs. 17-24. The instant action is a challenge to Petitioner's present

3:26-cv-03071-LEK-VET

detention, and it is therefore properly considered under Section 2241. See V.V. v. Orozco, Civ. No. 20-560 KG/CG, 2020 WL 3542480, at *6 (D.N.M. June 30, 2020) (distinguishing between a request that the district court declare the petitioner a UAC and a request that DHS be enjoined from applying an age determination that allegedly violated § 1232(b)(4)); Alam v. Keeton, No. CV-19-05538-PHX-MTL (CDB), 2020 WL 5439513, at *6 (D. Ariz. Sept. 9, 2020) ("The Court has habeas corpus jurisdiction to review this claim because it challenges ICE's detention authority, not its discretionary decision to detain, rather than release, Petitioner. While it precludes this Court from reviewing ICE's discretionary weighing of evidence and decision, 8 U.S.C. § 1226(e) does not bar review of whether ICE complied with the requirements established by § 1232(b)(4) in order to exercise its detention authority." (citing Jennings, 138 S. Ct. at 841)). Petitioner "carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." See Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) (citation omitted).

The Court, therefore, does not determine Petitioner's actual date of birth or whether Petitioner is, or was, a UAC for purposes of his removal proceedings or any application for immigration relief. The question before the Court is narrower: whether Petitioner has shown that Respondents failed to comply with relevant statutes and regulations when they determined, upon Petitioner's detention, that he was an adult and subsequently placed him in an adult detention facility.

Petitioner has made that showing. Section 1232(b)(4) requires that age-determination procedures "take into account multiple forms of evidence, including the non-exclusive use of radiographs." 8 U.S.C. § 1232(b)(4). The ORR Guide similarly provides that age determinations must "take into account the totality of the circumstances and evidence," and that dental maturity assessments using radiographs may be used only "in conjunction with other evidence." ORR Guide § 1.6.2. The requirement that Respondents consider multiple forms of evidence is particularly important where, as here,

13

the record contains conflicting evidence about Petitioner's age. Cf. id. at § 1.6 (identifying certain "challenges in determining the age of individuals in custody," including, *inter alia*, "[u]navailable documentation" and "[c]ontradictory or fraudulent identity documentation and/or statements").

The record reflects that, on December 30, 2025, Petitioner's date of birth was recorded as June 1, 2006. See Return, Exh. 2 (Form I-867A) at 2. Petitioner now states that his actual date of birth is June 1, 2008. See Traverse at 2, 6. Petitioner further alleges that, when he was detained, Border Patrol officers took his birth certificate and did not return it to him or his counsel despite multiple requests. See Amended Petition at ¶ 5; Traverse, Exh. D (Y.A.A. Statement) at PageID.252. During Petitioner's January 16, 2026 credible fear interview, he told the asylum officer that he had previously lied about his date of birth. Petitioner explained to the asylum officer that, upon being detained, an immigration officer told Petitioner that he would be returned to Ethiopia if he told the immigration officer that he was a minor. See Amended Petition, Exh. A at PageID.188 (pg. 11 of 1/16/26 Interview Notes). The asylum officer noted that Petitioner was a "[p]ossible UAC." [Id.] Respondents thereafter obtained Dr. Senn's assessment, which concluded that, as of January 22, 2026, there was an empirical statistical probability of 87.05% that Petitioner had reached the age of eighteen. See Return at 3; see also id., Exh. 4 (Dental Report).

The record before the Court does not contain a written DHS, HHS, or ORR age determination. The record also does not show that Respondents considered whether Petitioner's alleged Ethiopian birth certificate is in Respondents' possession, custody, or control.[6] That omission is significant because the immigration judge appears to have

---

[6] The Court takes note of the fact that Petitioner filed as Exhibit H to the Traverse what appears to be a redacted copy of his birth certificate along with a certified translation of his birth certificate. [Dkt. no. 9-1 at PageID.267-68.] Petitioner claims that:

(. . . continued)

3:26-cv-03071-LEK-VET

relied, at least in part, on the absence of "anything official from the government of Ethiopia" in finding Petitioner to be an adult. See Return, Exh. 5 (5/22/26 Hearing Recording) at 17:22-17:35. If immigration officers in fact possessed Petitioner's birth certificate, Petitioner cannot be faulted for failing to produce it at his immigration hearing. Indeed, although Respondents state that "Petitioner had no identity documents when he was detained," [Return at 2,] they do not dispute Petitioner's assertions that his **birth certificate** was seized upon entering the United States, [Amended Petition at ¶ 5]. See generally Return. Nor does the Return dispute Petitioner's assertions that he was "coerced into lying about his age by immigration officials who apprehended him upon entry." [Id. at ¶ 3.]

Instead, Respondents claim that "the government conducted a thorough age determination appropriately based on the totality of circumstances." See Return at 2. The only evidence that Respondents point to in describing "the totality of circumstances," however, is "Petitioner's own inconsistent statements, a dental examination, and a contested hearing regarding his age during a bond hearing before an immigration judge (IJ) in which the IJ found that Petitioner is an adult." [Id.]

With respect to Petitioner's statements upon detention, particularly concerning his date of birth, Petitioner concedes that he represented that he was nineteen

> At the custody hearing on May 22, 2026, the Immigration Judge found Petitioner to be an adult . . . . Importantly, DHS counsel did not present the Petitioner's birth certificate as evidence to that hearing and even claimed after an investigation into the matter, that DHS was not in possession of Petitioner's birth certificate. However, on May 29, 2026, after an order by the Immigration Judge in Petitioner's removal proceedings, DHS did submit a copy of Petitioner's birth certificate with an English translation.

[Traverse at 3.] Petitioner's assertion, if true, gravely troubles the Court.

when he was first detained. See Amended Petition at ¶ 58. Petitioner asserts, however, that he provided this initial age because, *inter alia*, he was told by immigration officers that he would be deported to Ethiopia and was repeatedly told to change his date of birth. See Traverse, Exh. D (Y.A.A. Statement) at PageID.252. Petitioner similarly claimed during his January 16, 2026 credible fear interview that "[w]hen I was at the border, officer told me because of my young age they will return me back home. So I was so afraid so I did not tell my real age." [Amended Petition, Exh. A at PageID.188 (pg. 11 of 1/16/26 Interview Notes).] Petitioner's testimony was deemed credible by the asylum officer. See id. at PageID.189 (USCIS Credible Fear Determination Checklist and Written Analysis, dated 1/16/26). Additionally, Petitioner's assertion that he was told by immigration officers that he would be returned to Ethiopia if he revealed that he was a child is not disputed by Respondents. See generally Return. Given that it is uncontroverted that Petitioner used the June 1, 2006 date of birth to avoid the risk of being deported back to Ethiopia - the same country he now seeks asylum from - the Court finds that Respondents impermissibly relied exclusively on Petitioner's statements to conclude that he was not a minor. See Akinmade v. I.N.S., 196 F.3d 951, 955 (9th Cir. 1999) ("[I]n the circumstance of a refugee fleeing persecution, such misrepresentations are wholly consistent with his testimony and application for asylum: he did so because he feared deportation to [his country of origin]." (some alterations in Akinmade) (citation and internal quotation marks omitted)); N.B., 2019 WL 4849175, at *10 (concluding that the respondents impermissibly relied on the petitioner's assertions that he was born in 1992 to contravene evidence that the petitioner was born in 2001 because the petitioner used the 1992 date to avoid being detained or deported prior to reaching the United States).

Respondents state that the immigration judge determined that Petitioner is an adult. See Return at 3. The Court, however, is not reviewing the immigration judge's ruling for purposes of Petitioner's removal proceedings. The Court is also not ordering

3:26-cv-03071-LEK-VET

the immigration judge to make a new age determination. The question in this habeas proceeding is whether Respondents may rely upon the existing age determination as the statutory basis for Petitioner's present adult detention. On the record before the Court, the immigration judge's ruling does not establish that Respondents complied with Section 1232(b)(4) and the applicable age-determination procedures before treating Petitioner as an adult for detention purposes. Cf. V.V., 2020 WL 3542480, at *9 (concluding that the petitioner was likely to succeed on the merits of his claim that ICE and the immigration judge failed to comply with 8 U.S.C. § 1232(b)(4)).

Finally, the dental assessment may be considered in an age determination, but it cannot substitute for the totality-of-the-evidence inquiry required by the TVPRA. See 8 U.S.C. § 1232(b)(4); ORR Guide § 1.6.2; see also N.B., 2019 WL 4849175, at *9-12 (concluding that the respondents were unlikely to have complied with the TVPRA where the age determination relied on a dental radiograph and improperly discounted other evidence of the petitioner's alleged minority); I.J. v. Keeton, No. CV-19-01904-PHX-SMB (JZB), 2019 WL 13196148, at *6-7 (D. Ariz. Apr. 17, 2019) (concluding that the petitioner was likely to succeed on the merits of his argument that the respondents violated the TVPRA and the ORR Guide where the record showed that the respondents relied on factors that were not listed as "permissible forms of evidence for evaluating an individual's age" and "[b]y failing to document the evidence considered and conclusions reached in the age determination" (citations omitted)); L.B. v. Keeton, No. CV-18-03435-PHX-JJT (MHB), 2018 WL 11447076, at *6 (D. Ariz. Oct. 26, 2018) (concluding that the petitioner was likely to succeed on the merits of his argument that the age determination in his case violated TVPRA and its implementing regulations because ORR relied exclusively on a dental radiographic analysis and an ORR official's behavioral observations). Respondents appear to have relied almost exclusively on Dr. Senn's dental report and Petitioner's initially contradictory statements. Such narrow reliance contravenes the TVPRA and the ORR Guide. Accordingly, the Court concludes

3:26-cv-03071-LEK-VET

that Respondents impermissibly classified and detained Petitioner as an adult when he entered the United States.

**III. <u>Ruling</u>**

Because Respondents failed to comply with the TVPRA and its implementing regulations, Respondents may not continue to rely on the existing adult-age determination or the immigration judge's May 22, 2026 custody determination as the basis for detaining Petitioner as an adult unless and until Respondents conduct or obtain an age determination that complies with Section 1232(b)(4) and the applicable agency procedures. That determination must consider the totality of the evidence, including, but not limited to: Petitioner's explanation during his credible fear interview of the reason that he previously provided an incorrect birthdate; the asylum officer's notation that Petitioner was a possible UAC; any statements disclosed by Petitioner; Petitioner's Ethiopian birth certificate; and any other documentary or testimonial evidence available to Petitioner and Respondents.

Petitioner's request for immediate transfer to ORR custody is denied with prejudice. Even assuming, without deciding, that Petitioner's date of birth is June 1, 2008, Petitioner reached the age of eighteen on June 1, 2026. Petitioner is therefore no longer eligible for placement in ORR custody as a minor. <u>See</u> 8 U.S.C. § 1232(c)(2)(B). Petitioner also cannot seek habeas relief pursuant to the <u>Flores</u> Settlement Agreement because he is no longer a minor. The <u>Flores</u> Settlement Agreement expressly states that "[t]his Agreement shall cease to apply to any person who has reached the age of eighteen years." <u>See</u> <u>Flores et al. v. Johnson et al.</u>, Case No. CV 85-4544-RJK(Px) (C.D. Cal.), Plaintiffs' First Set of Exhibits in Support of Motion for Class-Wide Enforcement of Settlement [Part 1: Exhibits 1-6], filed 2/2/15 (dkt. no. 101), Exh. 1 (Stipulated Settlement Agreement, last dated 1/13/97) at § I.4. Because Petitioner is now at least eighteen-years-old, the <u>Flores</u> Settlement Agreement "cease[s] to apply" to him. <u>See id.</u>; <u>cf.</u> <u>Flores v. Lynch</u>, 828 F.3d 898, 905, 909-10 (9th Cir. 2016) (holding that the <u>Flores</u>

Settlement Agreement applies to detained minors); J.S.G. v. Stirrup, Civil Case No. SAG-20-1026, 2020 WL 1985041, at *10 (D. Md. Apr. 26, 2020) (concluding that the minor would "age out" upon turning eighteen and "los[e] his entitlement to release under the Flores Agreement"). Accordingly, Petitioner's request for a "Flores-compliant custody hearing before a neutral adjudicator" is also denied with prejudice.

The Court further denies Petitioner's request to immediately release him to his proposed sponsor. Such relief would require this Court either to determine that Petitioner was a minor when he was first detained, or to determine that Petitioner is otherwise entitled to aged-out-UAC protections. The present record does not permit the Court to make those determinations without crossing the jurisdictional line described *supra*. Petitioner's request for immediate release is therefore denied without prejudice.

Petitioner's age of majority, however, does not render the Amended Petition moot. If an age determination that complies with Section 1232(b)(4) concludes that Petitioner was under eighteen when he was taken into federal immigration custody and otherwise satisfied the statutory criteria for treatment as a UAC, then Petitioner may be entitled to the protections provided to individuals who age out of UAC status. See 8 U.S.C. § 1232(c)(2)(B). Section 1232(c)(2)(B) requires the Secretary of DHS to consider placement of aged-out UACs "in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight," and provides that such individuals are eligible to participate in alternatives to detention, including placement with an individual or organizational sponsor. See id.; see also Garcia Ramirez, 812 F. Supp. 3d at 91-92.

Thus, the Amended Petition is granted insofar as Respondents are ordered to conduct or obtain a written age determination that complies with Section 1232(b)(4) and its implementing regulations within **fourteen days** of the filing of this Order. If Respondents determine that Petitioner was under eighteen when he was first detained and otherwise qualified as a UAC, Respondents must, within **seven days** of that

3:26-cv-03071-LEK-VET

determination, conduct the least-restrictive-setting analysis required by Section 1232(c)(2)(B). That analysis must consider Petitioner's danger to self, danger to the community, and risk of flight, as well as alternatives to detention, including release to Petitioner's proposed sponsor, Ardo Moalin Abdi, or another appropriate placement that is less restrictive than detention.

If Respondents determine that Petitioner was an adult when he entered the United States, Respondents are ordered to provide Petitioner and his counsel with the written age determination and file that determination with the Court within **three days** of the determination being made. The written age determination must, at a minimum, explain what evidence was considered and how Respondents weighed any conflicting age evidence. If Respondents do not complete an age determination that complies with Section 1232(b)(4) within **fourteen days** of the filing of this Order, Respondents may be ordered to show cause why Petitioner should not be released to an appropriate least restrictive setting subject to reasonable conditions of supervision pending completion of a determination that does comply with the statute.

Petitioner has also requested that the Court award him attorney's fees and costs. See Amended Petition at pg. 26. The Court will consider an application requesting reasonable attorney's fees and costs that is filed within thirty days of the entry of judgment. The Court, therefore, denies Petitioner's request for attorney's fees and costs without prejudice.[7]

## CONCLUSION

For the foregoing reasons, Petitioner Y.A.A.'s Amended Petition for Writ of Habeas Corpus and Order to Show Cause Within Three Days; Complaint for Declaratory

---

[7] The Court need not address Petitioner's claims arising under the APA or the Fifth Amendment, [Amended Petition at pgs. 17-22,] because the Petition can be resolved on TVPRA and regulatory grounds.

3:26-cv-03071-LEK-VET

and Injunctive Relief, filed May 20, 2026, is GRANTED IN PART AND DENIED IN PART. The Amended Petition is GRANTED insofar as Respondents are ORDERED to provide Petitioner with a written age determination consistent with the terms of this Order within **fourteen days** of the filing of this Order. If Respondents determine that Petitioner was under eighteen when he was first detained and otherwise qualified as a UAC, Respondents are ORDERED to conduct the least-restrictive-setting analysis required by Section 1232(c)(2)(B) within **seven days** of that age determination. If Respondents determine that Petitioner was an adult when he entered the United States, Respondents are ORDERED to provide Petitioner and his counsel with the written age determination and file that determination with the Court within **three days** of the determination being made. The Amended Petition is DENIED WITH PREJUDICE as to Petitioner's requests that he be transferred to ORR custody and be afforded a <u>Flores</u>-compliant custody hearing. The Petition is DENIED WITHOUT PREJUDICE as to Petitioner's request for attorney's fees and costs and his request that he be immediately released to his proposed sponsor.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 29, 2026.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**<u>YA.A. VS. CHRISTOPHER J. LAROSE, ETC., ET AL</u>; 3:26-cv-03071 LEK-VET; ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

3:26-cv-03071-LEK-VET